IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

LOUISE T. SPEARMAN                                                              PLAINTIFF

V.                                                                  NO. 4:17-CV-156-DMB-JMV

REHABILITATION CENTERS, LLC
d/b/a Millcreek of Magee                                                       DEFENDANT

## ORDER

Before the Court in this employment discrimination action is Rehabilitation Centers, LLC's motion for summary judgment. Doc. #38.

### I
### Procedural History

On November 1, 2017, Louise T. Spearman, acting pro se, filed a complaint for employment discrimination against "Acadia Healthcare Inc dba Millcreek of Magee." Doc. #1. The complaint asserts a claim for wrongful termination based on sex. *Id*. On January 11, 2018, Rehabilitation Centers, LLC ("Millcreek)," asserting that it was "incorrectly identified as Acadia Healthcare," answered the complaint.[1] Doc. #8. On November 13, 2018, Millcreek filed a motion for summary judgment. Doc. #38. Spearman did not respond to the motion.

### II
### Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only if the pleadings and record materials reveal no genuine issue as to any material fact." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). "A material fact is one that might

---

[1] On the parties' joint stipulation, United States Magistrate Judge Jane M. Virden directed that Rehabilitation Centers be substituted as the defendant in the caption of this action. Doc. #34.

affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. (internal quotation marks and citations omitted). In making these determinations, a court "must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor." *Id*. (internal quotation marks and alterations omitted). "The party moving for summary judgment bears the burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact, and the nonmovant must then point to or produce specific facts demonstrating that there is a genuine issue of material fact." *James v. Woods*, 899 F.3d 404, 407 (5th Cir. 2018) (internal quotation marks and alteration omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

When, as here, the moving party raises a defense of qualified immunity:

> the court must decide: 1) Whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right; and 2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct so that a reasonable official in the defendant's situation would have understood that his conduct violated that right.

*Dean v. Phatak*, 911 F.3d 286, 291 (5th Cir. 2018).

### III
### Factual Background

Millcreek is an organization which provides treatment for children and adolescents suffering from "severe emotional, behavioral, and/or developmental disturbances …." Doc. #38-2 at ¶ 4. Of relevance here, Millcreek runs multiple Home and Community Based Services ("HCBS") programs, including a Day Program and a Supervised Living Program. *Id*.

In March of 2016, Louise T. Spearman was hired as a part-time direct care worker at Millcreek's supervised living home for women. *Id*. at 5; Doc. #38-1 at 28–29. In this role, Spearman, under the supervision of site manager Linda Hemphill, assisted the home's residents, cleaned rooms, and performed transportation services. *Id*. at 39; Doc. #38-2 at ¶ 5.

On July 31, 2016, Spearman was promoted to a program assistant position. Doc. #38-2 at ¶ 7. Following her promotion, Spearman reported to Tomeca Bacon, Millcreek's program director. *Id*. at ¶¶ 2, 7. In her new role, Spearman assisted Bacon with the running of Millcreek's Grenada, Mississippi, center and supervised the direct care workers at the center. Doc. #38-1 at 40. The position also required that Spearman "[a]ssist with the completion of all required documentation as required by policy and/or state regulations." Doc. #38-2 at Ex. A.

On February 8, 2017, Bacon issued Spearman a Final Written Warning for leaving patients unattended. *Id*. at Ex. C. Spearman did not sign the warning but submitted a written statement which provided, in relevant part:

> I have worked at Millcreek for almost a year without a write up or written warning. I feel the grievance on my first write up of a severity that I cannot imagine. I would not intentionally leave the building nor the clients. I was caught between making a choice of going to the aid of a driver on the outside of the building with clients that I was not sure of the safety and staying on the inside with clients that were sitting comfortable watching TV. I admit that I should have handled the situation better and instead of speaking in general, assigned someone specifically.

*Id*.

On Thursday, February 16, 2017, Bacon reviewed a set of service activity reports and discovered that Spearman had not initialed many of them. Doc. #38-2 at ¶ 11. Bacon felt this indicated that Spearman was not reviewing the reports daily, as required. *Id*. Bacon then met with Spearman to discuss the necessity of reviewing reports. *Id*. During this meeting, Spearman became "angry and started yelling" that she could not review activity reports every day. *Id*. When

3

Bacon responded that daily review was mandatory, Spearman yelled, "I'm not doing this anymore, I resign!" *Id*. Bacon asked Spearman to "calm down and have a seat" but Spearman stated, "You'll have my two week notice on Monday." *Id*. Spearman then left the office. *Id*.

Following the meeting, Bacon determined that it would be appropriate to accept Spearman's resignation immediately and not have her "work out the two week notice period." *Id*. at ¶ 12. Bacon based this decision on Spearman's "disrespectful and insubordinate" behavior, her Final Written Warning, and her expressed desire to avoid doing her job. *Id*. Bacon presented her proposal to Joe Earp, the HCBS Director of Millcreek, who approved the immediate acceptance of the resignation. *Id*. at ¶¶ 2, 12.

On Monday February 21, 2017, Spearman returned to Millcreek. *Id*. at ¶ 13. After Bacon informed Spearman that the resignation had been accepted effective immediately, Spearman gathered her belongings and left the facility. *Id*. The following day, Spearman called Bacon and requested to work the remainder of the two week notice period. *Id*. Bacon denied this request because it did not "make sense that she would come in and do a better job of completing her tasks after resigning." *Id*. Spearman's program assistant duties were folded into a newly-created position titled, "Project Manager," which was ultimately given to Leeantia Umstead Ellis, a woman. *Id*. at ¶ 14.

# IV
## Analysis

Spearman's complaint asserts a single claim—wrongful termination under Title VII of the Civil Rights Act of 1964. Doc. #1 at 3. In the absence of direct evidence of discrimination, Title VII discrimination claims are evaluated under the *McDonnell Douglas* burden-shifting analysis. *Roberson-King v. La. Workforce Comm'n, Office of Workforce Dev.*, 904 F.3d 377, 380 (5th Cir. 2018). Under this framework:

> First, the plaintiff must present a prima facie case of discrimination by showing that she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. After the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. If the defendant articulates a legitimate reason, the burden shifts back to the plaintiff to show the reason is merely pretextual. In conducting a pretext analysis, the court does not engage in second-guessing of an employer's business decisions.

*Id*. at 381 (citations, alterations, and quotation marks omitted).

Millcreek argues summary judgment is warranted because Spearman cannot establish a prima facie case because she cannot show she suffered an adverse employment action, or that she was treated less favorably than a similarly situated employee outside her protected group. Doc. #39 at 5–9. Millcreek further contends that even if Spearman could establish a prima facie case, summary judgment would still be appropriate because Spearman cannot show that the legitimate discriminatory reasons offered for the immediate acceptance of her resignation were pretext. *Id*. at 9–10.

An adverse employment action is an "employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). This term consists of "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id*. (quotation marks omitted). Although less than clear, Spearman's complaint seems to rely on two allegedly adverse actions: (1) the acceptance of her verbal resignation; and (2) the refusal to let her work the two-week notice period.

As an initial matter, acceptance of a voluntary resignation is not an adverse employment action. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("A resignation is

5

actionable under Title VII … only if the resignation qualifies as a constructive discharge.").[2] Relatedly, following acceptance of a voluntary resignation, an employer's refusal to allow an employee to complete a two-week notice period is not an adverse employment action. *See Fortenberry v. Avon Engineered Fabrications, Inc.*, No. 1:07-cv-565, 2008 WL 11344695, at *3 (S.D. Miss. July 11, 2008) ("[T]he plaintiff's own statement in her EEOC charge demonstrates that she intended to resign from the company but merely disagreed with her employer over the terms and timing of her resignation. [T]his was not an adverse employment action by the defendant.");[3] *see generally Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, n.4 (5th Cir. 1980) (refusal to allow two-week notice period not actionable discharge). Because there is no dispute that Spearman's resignation was voluntary, the Court concludes that Spearman has not shown she suffered an adverse employment action and, therefore, her Title VII claim fails.

## V
## Conclusion

Millcreek's motion for summary judgment [38] is **GRANTED**.

**SO ORDERED**, this 2nd day of April, 2019.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[2] *See also Curby v. Solutia, Inc.*, 351 F.3d 868, 872 (8th Cir. 2003) ("An employee cannot submit a resignation and then claim the employer's acceptance of the resignation is an adverse employment action.").

[3] *See also Wynn v. Paragon Sys., Inc.*, 301 F.Supp.2d 1343, 1354 (S.D. Ga. 2004) ("Paragon's decision to reject Wynn's offer to work through a two week notice period does not constitute an adverse employment action."); *Rojas v. GMD Airlines Servs., Inc.*, 254 F.Supp.3d 281, 301 (D.P.R. 2015) (no adverse employment action where employee asked to leave three days after giving two week notice).